**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE PABLO ALVAREZ-COTA,<br>Defendant. | Case No. 99-cr-20106-BLF-1<br><br>**ORDER DENYING PETITION FOR WRIT OF ERROR CORAM NOBIS**<br><br>[Re: ECF No. 262] |

Jose Pablo Alvarez-Cota petitions this Court to vacate his over-twenty-year-old conviction for conspiracy to possess cocaine with intent to distribute. Mr. Alvarez-Cota contends that his conviction, which was entered pursuant to his guilty plea on November 23, 1999, was improperly secured through misadvice by his counsel and misrepresentations by the prosecutor on his case concerning his immigration status.

Mr. Alvarez-Cota has filed a Petition for a Writ of Error Coram Nobis and supporting Memorandum. *See* Pet., ECF No. 262; Mem., ECF No. 262-1. The Government has opposed. Opp'n, ECF No. 278. Mr. Alvarez-Cota has filed a reply. Reply, ECF No. 283.

The Court has reviewed the parties' briefing and supporting exhibits and has considered the parties' arguments. For the reasons stated below, Mr. Alvarez-Cota's petition is DENIED.

**I. BACKGROUND**

**A. Guilty Plea and Sentencing**

On November 23, 1999, Mr. Alvarez-Cota pled guilty to conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. § 846. Mem. Ex. B ("Plea Hr'g Tr.") 15:17-22. At his plea hearing, Mr. Alvarez-Cota admitted that he and an associate had met with an individual who he did not realize was a confidential informant to purchase 20 kilos of cocaine at total price of

1  $260,000. *Id.* 12:5-15:16.

2  At the time of his plea hearing, Mr. Alvarez-Cota was a Mexican citizen but had been a

3  Lawful Permanent Resident ("LPR") for about thirteen years. Mem. Ex. A ("Alvarez-Cota

4  Decl.") ¶ 1.

5  During the plea hearing, the presiding judge, Judge Fogel, warned Mr. Alvarez-Cota about

6  the potential consequences of his conviction to his LPR status:

> THE COURT: All right. Do you understand that this conviction can and most likely will affect your resident alien status in the United States?
>
> [MR. ALVAREZ-COTA]: Yes, I understand.
>
> THE COURT: So you could lose that status and be deported as a result of this conviction.
>
> Do you understand that?
>
> [MR. ALVAREZ-COTA]: Yes. I understand it, but I wouldn't like to be deported.
>
> THE COURT: I understand that you wouldn't like to be deported, and I respect that, but you need to know before you enter your plea that this is one of the consequences which could occur.
>
> [MR. ALVAREZ-COTA]: Yes, I understand.

Plea Hr'g Tr. 10:17-11:8.

Mr. Alvarez-Cota cooperated extensively with government agents for several years after he entered his plea. Alvarez-Cota Decl. ¶ 5.

In recognition of Mr. Alvarez-Cota's cooperation, the prosecutor, John Glang, recommended a time served disposition, which the Court imposed on May 11, 2004. Mem. Ex. C ("Sentencing Hr'g Tr.") 2:14-3:17, 8:7-15, ECF No. 262-4. At the sentencing hearing, Mr. Alvarez-Cota was represented by defense counsel Mark Arnold. *Id.* at 2:8-10.

During the sentencing hearing, Mr. Alvarez-Cota asked Judge Fogel, "I would like to ask Your Honor if there is any way that you could help me get my papers, my green cards, so that I can stay here and work and support my family." *Id.* at 3:21-24. Judge Fogel responded:

> Well, Mr. Cota, that's not something I can help you with. I think that's something should talk to Mr. Arnold about and perhaps he can refer you to somebody that specializes in that area.
>
> I will say, though, that the record in this case, the help you've given to the various agents will certainly work in your favor in that you might have whoever helps you with the immigration matter contact

> the law enforcement people with whom you worked. I'm sure they would be willing to put in a good word for you, but, again, that's totally outside of my jurisdiction.

*Id.* at 3:18-4:15. After Judge Fogel Responded, Mr. Glang added, "I have discussed this matter with Mr. Arnold and we're taking steps, appropriate steps behind the scenes." *Id.* at 4:13-15.

### B. Removal Proceedings and Deferred Removal Under the Convention Against Torture

In 2007, Mr. Alvarez-Cota was detained and placed in removal proceedings. Mem. Ex. H ("G. Cota Decl.") ¶ 5, ECF No. 7. Mr. Alvarez-Cota's Notice to Appear charged that he was subject to removal under Section 273(a)(2)(B)(i) of the Immigration and Nationality Act ("INA") because he had been convicted of violating a law relating to a controlled substance, and under Section 273(a)(2)(A)(iii) of the INA because he had been convicted of an aggravated felony. Mem. Ex. I ("Notice to Appear") 3, ECF No. 262-10.

Mr. Alvarez-Cota retained immigration attorney J. Hernando Prada in 2007. *Id.* ¶ 7. An immigration judge in San Francisco sustained the charges and Mr. Alvarez-Cota was ordered removed. Mem. Ex. G ("Todd Decl.") ¶ 8, ECF No. 262-8.

Mr. Alvarez-Cota applied for deferral of his removal under the UN Convention Against Torture ("CAT"). Todd Decl. ¶ 8; *see also* Jiang Decl., at 4-7. After being informed that Mr. Alvarez-Cota was facing removal proceedings as a result of his criminal conviction, AUSA Glang, wrote a letter to the Bureau of Citizenship & Immigration Services on Mr. Alvarez-Cota's behalf. *See* Mem. Ex. F ("Glang Ltr.").

Mr. Alvarez-Cota's application was granted on November 1, 2007, Harris Decl. Ex. 1 ("Jiang Decl.") 24,[1] ECF No. 279-2, after he established that it was more likely than not that he would be tortured by the Mexican Government or the government would acquiesce to his torture by private actors, Todd Decl. ¶ 8.

### C. Rejection of Green Card Application

Mr. Alvarez-Cota applied for and received employment authorization in 2007, 2008, 2009. Alvarez-Cota Decl. ¶ 8.

---

[1] All page references for the Jiang Declaration refer to the ECF Header page number.

3

1    After his last employment authorization expired in 2010, Mr. Alvarez-Cota applied to renew his green card. *Id.* ¶ 9; *see also* Mem. Ex. K ("I-90 Application"), ECF No. 262-12. But the application was denied on January 4, 2011. *See* Reply Ex. B ("I-90 Decision"), ECF No. 283-2; *see also* Alvarez-Cota Decl. ¶ 9.

For several years after the denial of his application, Mr. Alvarez-Cota repeatedly went to the immigration office asking what he should do to regain some form of status. Alvarez-Cota Decl. ¶ 10. But he was given "various, often conflicting advice by immigration officers." *Id.*

### D.    Consultation with Lanphier & Associates

In 2016, Mr. Alvarez-Cota consulted immigration attorneys at Lanphier & Associates about attempting to regain his residency status. *Id.* ¶ 11. These attorneys advised that Mr. Alvarez-Cota should be able to regain residency based on his wife's U.S. citizenship. *Id.* Attorneys from the firm prepared and submitted forms I-130 and I-485 on behalf of Mr. Alvarez-Cota and his wife. *Id.* ¶ 12. Sometime in 2017 or after, Mr. Alvarez-Cota's application was denied. *Id.* ¶¶ 13-14.

Mr. Alvarez-Cota returned to Lanphier & Associates after the rejection, and the firm advised him that it would make further efforts on his behalf if he paid additional retainer fees. *Id.* ¶ 14. Mr. Alvarez-Cota paid the fees and continued to wait as directed by staff at the firm. *Id.*

### E.    Referral to Current Counsel and filing of Present Petition

In 2020, after again being advised to wait by Lanphier & Associates, Mr. Alvarez-Cota lost confidence in these attorneys and went to the Mexican consulate where he was referred to attorney Erin J. Radekin. *Id.* ¶¶ 15-16.

On August 10, 2021, Mr. Alvarez-Cota consulted with Ms. Radekin. *Id.* In January 2022, after Ms. Radekin had completed her evaluation of Mr. Alvarez-Cota's case, she advised him that as long as his conviction remained, he would never get lawful status and would remain at risk of deportation. *Id.* Mr. Alvarez-Cota retained Ms. Radekin in early February 2022 to prepare the petition that is now before the court. *Id.* ¶ 17.

Mr. Alvarez-Cota filed his Petition for Writ of Error Coram Nobis on August 2, 2022. *See* Pet. Mr. Alvarez-Cota is not currently in removal proceedings. Alvarez-Cota Decl. ¶ 18.

## II. LEGAL STANDARD

District courts have the power to issue a writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651(a). *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987) (citing *United States v. Morgan*, 346, U.S. 502, 506-09 (1954)). "The writ of coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Estate of McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995); *see also Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013). "Both the Supreme Court and [the Ninth Circuit] have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007) (citing *Morgan*, 346, U.S. at 511).

To qualify for coram nobis relief, a defendant must establish four elements: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991) (citation omitted). "Because these requirements are conjunctive, failure to meet any one of them is fatal." *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002) (citing *McClelland*, 941 F.2d at 1002).

## III. DISCUSSION

### F. Whether Mr. Alvarez-Cota is Entitled to Coram Nobis Relief

The Government does not contest that Mr. Alvarez-Cota satisfies the first element of the test for coram nobis relief. The parties' dispute centers on the second, third, and fourth prongs of the analysis and whether Mr. Alvarez-Cota is barred from raising his petition under the doctrine of laches. As will be explained below, the Court finds that Mr. Alvarez-Cota's petition fails on either the second or fourth prongs of the analysis because (1) he has not provided valid reasons for not attacking the conviction earlier, and (2) he has not shown that the error he suffered is of the most fundamental character. Because either failure requires denial of the petition, the Court does not reach the other arguments.

### 1. Whether Mr. Alvarez-Cota Demonstrated Valid Reason for Delay

"Because a petition for writ of error coram nobis is a collateral attack on a criminal conviction, the time for filing a petition is not subject to a specific statute of limitations." *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994). "However, petitioners are entitled to this relief only if they can 'provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier.'" *United States v. Kroytor*, 977 F.3d 957, 961 (9th Cir. 2020) (quoting *Kwan*, 407 F.3d at 1012). The Ninth Circuit has "not expressly defined what constitutes a valid or sound reason." *Id.* However, it has noted that "courts have denied relief for unjustified delay where 'the petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ.'" *Id.* (quoting *Kwan* 407 F.3d at 1013).

Whether Mr. Alvarez-Cota's delay was justified turns on several key events. Mr. Alvarez-Cota pled guilty to drug trafficking on November 23, 1999, and was sentenced in 2004., Cota Decl. ¶ 4. In 2007, he received a Notice to Appear from INS and was detained and placed in removal proceedings. *Id.* ¶ 7; Notice to Appear; G. Cota Decl. ¶ 5. The notice stated that Mr. Alvarez-Cota was subject to removal because of his conviction. Notice to Appear 3. Mr. Alvarez-Cota was ordered removed, but he applied for, and was granted, relief under the UN Convention Against Torture ("CAT"). *See* Jiang Decl. 4, 24; *see also* Todd Decl. ¶ 8. In 2010, Mr. Alvarez-Cota applied to renew his green card but was denied on January 4, 2011. Cota Decl. ¶ 9; I-90 Decision 1. About five years later, in 2016, Mr. Alvarez-Cota was advised by an attorney at Lanphier & Associates that he should be able to regain his residency status based on his wife's U.S. citizenship. Cota Decl. ¶ 11. Attorneys at Lanphier & Associates prepared and submitted forms I-130 and I-485 for Mr. Alvarez-Cota and his wife, but the applications were rejected sometime between 2017 and 2020. Cota Decl. ¶ 14. Sometime in 2020, after losing faith in Lanphier & Associates, Mr. Alvarez-Cota contacted the Mexican Consulate, which referred him to his current counsel. Cota Decl. ¶ 15. On August 10, 2021, Mr. Alvarez-Cota consulted with his current counsel, Ms. Radekin, who eventually advised that him that as long as his conviction remained, he would never get lawful status. *Id.* ¶ 16. He filed his coram nobis petition in this

Court on August 2, 2022.  *See* Petition.

The parties' dispute centers on whether Mr. Alvarez-Cota's delay in filing his petition after his removal proceedings 2007 was justified.  The Government argues "[b]y 2007, Cota knew that his conviction was an aggravated felony that rendered him removable and inadmissible" and therefore "[h]e could have challenged his conviction at that time."  Opp'n 8.  The Government notes that, despite this asserted knowledge, Mr. Alvarez-Cota "did not seek legal advice with the goal of restoring his [legal permanent resident] status until 2016."  *Id.* at 7.  Mr. Alvarez-Cota concedes that he knew in 2007 that he was deportable because of his conviction.  Reply 12.  But he argues "he did not learn in [his 2007 removal] proceedings that he was permanently unable to secure any form of lawful status."  Reply 12.  According to Mr. Alvarez-Cota, he did not learn this fact until he consulted with his current counsel in 2021.  *Id.*

The Court finds Mr. Alvarez-Cota's delay between his removal proceedings in 2007 and consulting with Lanphier & Associates in 2016 was unjustified.  Mr. Alvarez-Cota states in his declaration, "At the time of my plea, I believed that I would not be deported or lose my residency status based on assurances made to me by my attorney and the prosecutor."  Cota Decl. ¶ 4.  Accepting this declaration as true, the fact that Mr. Alvarez-Cota was placed in removal proceedings informed him that the alleged assurances that he would not be deported based on his conviction were erroneous.  Thus, when Mr. Alvarez-Cota was placed in removal proceedings, he was put on notice that he had been misled by his counsel's (and the prosecutor's) alleged assurances.  Any delay after this point could not be based on the alleged assurances because Mr. Alvarez-Cota had reason to know that any assurances were erroneous.  *Cf. Kroytor*, 977 F.3d at 962 (noting that delay may be justified "where a petitioner delayed taking action due to misadvice from his attorney *that he had no reason to know was erroneous*" (emphasis added)).

That Mr. Alvarez-Cota's removal was ultimately deferred under the Convention Against Torture does not undermine that the removal proceedings gave Mr. Alvarez-Cota reason to know that the alleged assurances were erroneous.  Before granting the deferral, the Immigration Judge sustained the charges against Mr. Alvarez-Cota.  Todd Decl. ¶ 8.  The Immigration Judge then granted the deferral after establishing that it was more likely than not that Mr. Alvarez-Cota would

7

be tortured by the Mexican government or the government would acquiesce to his torture by private actors. Todd Decl. ¶ 8. Thus, the deferral in no way undermined that Mr. Alvarez-Cota's conviction rendered him removable contrary to the alleged assurance he received.

Mr. Alvarez-Cota's delay in bringing his petition is unjustified because he has no "sound reasons" for failing to bring it in the nine years between his removal proceedings in 2007 and his consultation with Lanphier & Associates in 2016. Mr. Alvarez-Cota attempts to justify this delay by noting that he received employment authorizations in 2007, 2008, and 2009 and then "repeatedly went to the immigration office" after his green card application was rejected in 2010. Cota Decl. ¶¶ 8-9. But the fact that Mr. Alvarez-Cota received employment authorizations—which are available to individuals who received CAT deferrals, *see* Harris Decl. Ex. 2 ("Stark Decl."), ECF No. 278-2—does not render his delay during those years reasonable. Nor does the fact that he repeatedly visited an immigration office "for several years" after his green card application was denied—especially given Mr. Alvarez-Cota's own assertion that immigration officers gave him "various, often conflicting advice." Alvarez-Cota Decl. ¶ 10. Finally, Mr. Alvarez-Cota does not provide sound reasons for his delay through his vague reference to "advice [he] received from Mr. Prado when [he] was released from immigration custody." *See id.* During Mr. Alvarez-Cota's removal proceedings in 2007, his immigration attorney, Mr. Prado, wrote to Mr. Alvarez-Cota's defense counsel:

> Mr. Cota-Alvarez is in custody by the Bureau of Citizenship and Immigration Services, and is being held without bond because the criminal conviction on which you represented him is an aggravated felony. This leaves Mr. Cota-Alvarez without relief against removal.
>
> Mr. Cota-Alvarez has informed me that that [*sic*] as part of the disposition of his criminal case there was an agreement with the U.S. Attorney's office that if Mr. Cota-Alvarez became an informant for government, he would receive favorable treatment of his own case, and protection for his safety. Although not specifically mentioning that those benefits extended to include immigration proceedings, Mr. Cota-Alvarez informs me that he is very surprised that he is in removal proceedings, and that he is without relief.

Mem. Ex. D ("Prado Ltr."), ECF No. 262-5. Mr. Prado's letter makes clear that Mr. Alvarez-Cota had learned at least by the time of his removal proceedings that his conviction left him without relief against removal, contrary to any alleged assurances he had received. Thus, even if Mr.

8

Alvarez-Cota was diligent after he consulted with Lanphier & Associates in 2016, he has not provided sound reasons for waiting nine years to initiate that consultation. *Cf. United States v. Hakim*, No. 21-55617, 2022 WL 4103629, at *1 (9th Cir. 2022) (finding that petitioner did not have sound reasons for not seeking post-conviction relief sooner because he did not seek legal counsel to challenge his plea until thirteen years after he learned that INS intended to deport him).

In his Reply, Mr. Alvarez-Cota argues that the knowledge of his inability to attain lawful status is the only knowledge that would have put him on notice that alleged assurances were erroneous. Reply 8. Assuming for the sake of argument that this is correct, Mr. Alvarez-Cota has not established that it would be reasonable for him not to have learned of his inability to attain lawful status after his green card application was denied in January 2011. The decision denying the application explained:

> A search of USCIS records shows that you were ordered deported on November 1, 2007 at San Francisco, California. USCIS has no record showing that you subsequently regained lawful permanent resident status. Since you are no longer in proceedings, you are ineligible to receive evidence of permanent resident status.

I-90 Decision 1. The denial thus confirmed what Mr. Alvarez-Cota should have recognized in 2007—that contrary to what he purports to have believed was possible at the time of his plea, he had been ordered deported and had lost his residency status. Mr. Alvarez-Cota therefore had reason to know at this point that the alleged assurances he received were erroneous. Because Mr. Alvarez-Cota has not provided any justification for waiting over five years between the denial of his green card application in 2011 and later seeking advice from counsel in 2016, the Court finds that Mr. Alvarez Cota's delay was unjustified. *See Hakim*, 2022 WL 4103629, at *1 (explaining that a petitioner must provide "sound reason" for not seeking post-conviction relief sooner).

Mr. Alvarez-Cota's reliance on *United States v. Kwan* to argue that his actions were reasonable is misplaced. There, the petitioner, Kwok Chee Kwan, pled guilty to bank fraud and received a sentence that rendered his offense an aggravated felony. 407 F.3d at 1008-09. After Kwan was sentenced, the Immigration and Naturalization Service ("INS") issued Kwan a Notice to Appear, which stated that he was subject to deportation because he had been convicted of an aggravated felony. *Id.* at 1009. Kwan retained immigration counsel and challenged his

9

deportation on the basis that his conviction was not an aggravated felony under the statutes cited in his Notice to Appear. *Id.* An Immigration Judge ruled in Kwan's favor. *Id.* However, about three years later, INS issued Kwan a second Notice to Appear. *Id.* This time, an Immigration Judge found that Kwan had committed an aggravated felony. *Id.* Kwan filed his petition for writ of coram nobis shortly thereafter. *Id.* The court held that Kwan's delay in filing his petition was reasonable. *Id.* at 1014. The court reasoned that because Kwan's defense counsel told him before he pled guilty that deportation "was not a serious possibility," Kwan's decision to focus on challenging his deportation on the basis of that conviction was reasonable. *Id.* It was only after INS re-initiated removal proceedings against Kwan that he had reason to conclude that his counsel had misled him. *Id.*

The circumstances here are different. Unlike Kwan, rather than challenge his conviction shortly after the Immigration Judge determined that his conviction subjected him to removal, Mr. Alvarez-Cota waited nine years to seek legal counsel and 15 years to file his petition. Moreover, it is unclear whether Mr. Alvarez-Cota ever disputed that his conviction rendered him subject him to removal. This is important because the fact that Kwan disputed whether his conviction subjected him to removal supported Kwan's assertion that he was unaware of this consequence until INS determined that his conviction was an aggravated felony. Mr. Alvarez-Cota's request for a CAT deferral does not have the same effect because the CAT deferral had nothing to do with whether Mr. Alvarez-Cota's conviction rendered him removable.

In sum, the Court finds that Mr. Alvarez-Cota's delay in filing his petition was unjustified. Accordingly, Mr. Alvarez-Cota's petition is DENIED.

The Court proceeds to analyze the "fundamental error" prong to determine whether that prong provides an independent basis for denying Mr. Alvarez-Cota's petition.

### 2. Whether Cota has Demonstrated a Fundamental Error in his Guilty Plea

Mr. Alvarez-Cota attempts to establish a fundamental error by asserting that (1) his defense counsel, Mr. Arnold, provided ineffective assistance of counsel, Mem. 7-13, and (2) the Government misrepresented its power to eliminate the immigration consequences of his conviction, Reply 23-26. The Court addresses each argument in turn.

### a. Alleged Ineffective Assistance of Counsel

A petitioner can satisfy the fundamental error requirement by establishing that he received ineffective assistance of counsel in his criminal case. *Kwan*, 407 F.3d at 1014. To demonstrate ineffective assistance of counsel, the petitioner "must prove 1) that his counsel's performance fell below an objective standard of reasonableness, and 2) that the deficiency in his counsel's performance prejudiced him." *Id.* 407 F.3d at 1014-15 (citing *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). Because Mr. Alvarez-Cota's conviction was finalized prior to *Padilla v. Kentucky,* 559 U.S. 356 (2010), he must show that his attorney did not merely refrain from advising him about the immigration consequences of conviction, but instead responded to his specific inquiries regarding immigration consequences with an affirmative misrepresentation. *Kwan*, 407 F.3d at 1015-16; *cf. United States v. Chan*, 792 F.3d 1151, 1154 (9th Cir. 2015) (explaining that "Kwan's holding that affirmative misrepresentations by counsel regarding immigration consequences constitutes deficient performance under *Strickland* . . . survives *Padilla*" while noting that *Padilla's* holding that defense counsel "must inform her client whether his plea carries a risk of deportation" was not retroactive).

Mr. Alvarez-Cota argues that Mr. Arnold's performance was unreasonable for two reasons: (1) Mr. Arnold "failed to provide correct advice regarding the actual immigration consequences Mr. Alvarez-Cota was facing" and (2) Mr. Arnold failed to "take reasonable steps to mitigate the consequences in plea negotiations and sentencing." Mem. 9, 11. The Court addresses each argument in turn.

Mr. Alvarez-Cota's first argument fails because he provides no evidence of an affirmative misrepresentation by Mr. Arnold. In his motion, Mr. Alvarez Cota cites the transcript of his sentencing hearing. Mem. 9. The relevant section of the transcript reads:

> THE COURT: And, Mr. Cota, is there anything you would like to say before the sentence is imposed?
>
> [MR. ALVAREZ-COTA]: I would just like to ask Your Honor if there is any way that you could help me get my papers, my green cards, so that I can stay here and work and support my family.
>
> THE COURT: Well, Mr. Cota, that's not something I can help you with. I think that's something should talk to Mr. Arnold about and perhaps he can refer you to somebody that specializes in that area.

11

> I will say, though, that the record in this case, the help you've given to the various agents will certainly work in your favor in that you might have whoever helps you with the immigration matter contact the law enforcement people with whom you worked. I'm sure they would be willing to put in a good word for you, but, again, that's totally outside of my jurisdiction.
>
> [THE PROSECUTOR]: I have discussed this matter with Mr. Arnold and we're taking steps, appropriate steps behind the scenes.

Sentencing Hr'g Tr. 3:18-4:15. Absent from the transcript is any representation by Mr. Arnold at all—much less an affirmative misrepresentation that would support a claim for ineffective assistance of counsel.

The only other evidence Mr. Alvarez-Cota cites to suggest that he received an affirmative misrepresentation is his own declaration. In his declaration, Mr. Alvarez-Cota states, "At the time of my plea, I believed that I would not be deported or lose my residency status based on assurances made to me by my attorney and the prosecutor." Cota Decl. ¶ 8. Mr. Alvarez-Cota's vague assertion that he "believed" he would not be deported or lose his residency status based on "assurances" fails to show affirmative misadvice because it does not identify any advice at all. Nowhere does Mr. Alvarez-Cota identify what these purported assurances were. Nor does he ever state that his counsel told him that his conviction would not result in his removal or bar him from attaining residency status.

Moreover, Mr. Alvarez-Cota's declaration is contradicted by his express confirmation in his plea colloquy that he understood he could lose his status and be deported as a result of his conviction:

> THE COURT: All right. Do you understand that this conviction can and most likely will affect your resident alien status in the United States?
>
> [MR. ALVAREZ-COTA]: Yes, I understand.
>
> THE COURT: So you could lose that status and be deported as a result of this conviction.
>
> Do you understand that?
>
> [MR. ALVAREZ-COTA]: Yes. I understand it, but I wouldn't like to be deported.
>
> THE COURT: I understand that you wouldn't like to be deported, and I respect that, but you need to know before you enter your plea that this is one of the consequences which could occur.
>
> [MR. ALVAREZ-COTA]: Yes, I understand.

Plea Hr'g Tr. 10:17-11:13.

Mr. Alvarez-Cota's reliance on *United States v. Rodriguez-Vega*, 797 F.3d 781 (9th Cir. 2015), to downplay his statements during his plea colloquy is unconvincing. *See* Reply 8. In *Rodriguez-Vega*, the Ninth Circuit was applying the post-*Padilla* standard, which required petitioner's counsel to advise her that her conviction rendered her removal virtually certain. 797 F.3d at 786. The Ninth Circuit held that the district court's performance at the plea colloquy was "simply irrelevant" to whether counsel had given this advice. *See id.* at 787. Here, because Mr. Alvarez-Cota's conviction was finalized before the Supreme Court's ruling in *Padilla*, his counsel was under no duty to advise but rather was under a duty not to affirmatively misadvise. *See Chan*, 792 F.3d at 1154. Mr. Alvarez-Cota's plea colloquy serves not to show that the district court made statements that corrected some failure on the part of counsel to provide required advice. Rather, the plea colloquy shows through Mr. Alvarez-Cota's own statements that he understood he could be deported and therefore serves as evidence that his counsel did not fail him by providing affirmative misadvice in the first place.

The Court thus finds that Mr. Alvarez-Cota has not shown that Mr. Arnold made an affirmative misrepresentation about deportation or Mr. Alvarez-Cota's residency status. Mr. Alvarez-Cota has therefore not established that he received ineffective assistance of counsel based on this basis.

The Court now turns to Mr. Alvarez-Cota's second argument—that Mr. Arnold failed to "take reasonable steps to mitigate the consequences in plea negotiations and sentencing." It is unclear whether Mr. Alvarez-Cota intended to abandon this argument, as he does not reply to the arguments the Government raises in its opposition.

But even if Mr. Alvarez-Cota did not abandon this argument, it fails because Mr. Alvarez-Cota does not identify any way in which Mr. Arnold's "representation fell below an objective standard of reasonableness." *See Strickland*, 466 U.S. at 688. Mr. Alvarez-Cota identifies one "reasonable step" that he asserts Mr. Arnold did not take: failing to negotiate a plea deal that would have enabled Mr. Alvarez-Cota to plead to an alternative offense. Mem. 13. But Mr. Alvarez-Cota provides no evidence to suggest that Mr. Arnold in fact did not seek such a deal.

1 Nor does he provide any evidence that such a deal was available in a case involving an attempt to purchase 20 kilograms of cocaine from a DEA informant. *Cf. Kumar v. United States*, 773 F. App'x 420, 421 (9th Cir. 2019) (affirming denial of coram nobis petition where petitioner "ha[d] not submitted any evidence that other defendants originally charged with the same or similar crimes have signed immigration-neutral plea agreements"). Accordingly, Mr. Alvarez-Cota has not established that Mr. Arnold provided ineffective assistance of counsel based on his alleged failure to mitigate the consequences of Mr. Alvarez-Cota's conviction.

In sum, the Court finds that Mr. Alvarez-Cota has not shown that Mr. Arnold's performance fell below an objective standard of reasonableness. Because Mr. Alvarez-Cota has failed to satisfy the first prong of the *Strickland* test, the Court finds that Mr. Alvarez-Cota has not demonstrated that he received ineffective assistance of counsel. The Court does not reach the second prong of the test.

### b. Alleged Misrepresentations by the Prosecutor

Mr. Alvarez-Cota argues for the first time on reply, citing only out-of-circuit authority, that prosecutor, John Glang's, alleged misrepresentations to him provide an independent basis to find fundamental legal error. Reply 23-26. Mr. Alvarez-Cota contends that his plea was involuntary because Mr. Glang misrepresented to him "the government's power to prevent immigration consequences." Reply 23.

Mr. Alvarez-Cota's argument is based on the premise that "[a] plea induced by misleading statements of the prosecutor is involuntary." Reply 23; *see Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973) ("A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, the prosecutor, or his own counsel must stand unless induced by . . . misrepresentation (including unfulfilled or unfulfillable promises)." (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)).

This argument fails because Mr. Alvarez-Cota has not shown that the prosecutor made any misrepresentation. As noted above, Mr. Alvarez-Cota asserts in his declaration that he believed he would not be deported or lose status based on assurances from his attorney and "the prosecutor." Cota Decl. ¶ 4. But Mr. Alvarez-Cota's declaration recites only what he understood Mr. Arnold

14

and Mr. Glang to mean without providing evidence of what they said. Indeed, Mr. Alvarez-Cota does not even attempt to recite an affirmative representation by Mr. Glang. Moreover, Mr. Alvarez-Cota's declaration is directly contradicted by his own statement during his plea colloquy that he understood that he could lose his status and be deported as a result of his conviction. Plea Hr'g Tr. 10:22-11:8. Thus, for the same reasons that the Court found that Mr. Alvarez-Cota has not demonstrated that Mr. Arnold made any misrepresentations, the Court finds that Mr. Alvarez-Cota has not established that Mr. Glang made any misrepresentations.

And Mr. Alvarez-Cota's sentencing colloquy does not lend any support to his assertion that the Mr. Glang misrepresented "the government's power prevent immigration consequences." Reply 23. As noted above, at sentencing, Mr. Alvarez-Cota asked Judge Fogel, if there was any way that Judge Fogel could help him "get [his] papers, [his] green cards, so that [he] can stay here and work and support [his] family." Sentencing Tr. 3:21-24. After Judge Fogel responded that he could not help, Mr. Glang stated that he "ha[d] discussed this matter with Mr. Arnold and [they are] taking . . . appropriate steps behind the scenes." *Id.* 3:25-4:15. Nothing in this colloquy suggests that the prosecutor misrepresented the Government's power to Mr. Alvarez-Cota. Indeed, when Mr. Alvarez-Cota was placed in removal proceedings, Mr. Glang intervened to help Mr. Alvarez-Cota avoid removal. *See* Glang Ltr. Following his CAT deferral, Mr. Alvarez-Cota was able to stay in the United States and work, just as he stated that he wanted to do in the sentencing hearing. *See* Cota Decl. ¶¶ 7-8; *see also* Todd Decl. ¶ 8.

Accordingly, the Court finds that Mr. Alvarez-Cota has not demonstrated any misrepresentation by the prosecutor that would undermine that his plea was voluntary.

\*   \*   \*

In sum, the Court finds that Mr. Alvarez-Cota has not demonstrated that he received ineffective assistance of counsel or that he involuntarily accepted his plea based on a misrepresentation by the prosecutor. Accordingly, the Court finds that Mr. Alvarez-Cota has not shown a fundamental error in his guilty plea. His petition is therefore DENIED on this independent basis.

### G. No Hearing is Necessary

Mr. Alvarez-Cota requests for the first time on reply that the Court hold an evidentiary hearing. Reply 30. Whether a hearing is required on a coram nobis motion should be resolved in the same manner as habeas corpus petitions. *United States v. Taylor*, 648 F.2d 565, 573, n.25 (9th Cir. 1981). Thus, in deciding whether a petitioner is entitled to an evidentiary hearing, the district court should determine whether, accepting the truth of petitioner's factual allegations, he could prevail on his claim. *See United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994).

The Court finds that an evidentiary hearing is not warranted here because "the motion and the files and records of the case conclusively show that [Mr. Alvarez-Cota] is entitled to no relief." *United States v. McNeil*, 557 F. App'x 687, 687 (9th Cir. 2014) (quoting 28 U.S.C. § 2255(b)). Accordingly, Mr. Alvarez-Cota's request for an evidentiary hearing is DENIED.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Mr. Alvarez-Cota's petition is DENIED.

Dated: August 22, 2023

_____
BETH LABSON FREEMAN
United States District Judge